JL

WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Lionel Isaac Ruelas,

    Plaintiff,

v.

Ryan Thornell, et al.,

    Defendants.

No. CV-24-01808-PHX-JAT (DMF)

**ORDER**

On July 24, 2024, Plaintiff Lionel Isaac Ruelas, who is confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983, an Application to Proceed In Forma Pauperis, and a Motion to Appoint Counsel. In a September 10, 2024 Order, the Court granted the Application to Proceed, denied the Motion to Appoint Counsel without prejudice, and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On October 3, 2024, Plaintiff filed his First Amended Complaint (Doc. 10). The Court will order Defendant Thomas to answer the First Amended Complaint and will dismiss the remaining Defendants without prejudice.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff

has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.    First Amended Complaint

In his single-count First Amended Complaint, Plaintiff sues Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) Director Ryan Thornell, Nurse Practitioner Siji Thomas, Medical Grievance Coordinator Paul Shipley, and NaphCare Chief Medical Officer Jeffrey Alvarez, in their individual and official capacities.  Plaintiff

asserts a claim regarding his medical care. He seeks declaratory, injunctive, and monetary relief.

Plaintiff alleges the following:

Plaintiff suffers from "an extreme case of vertigo" and has an injured Achilles tendon, for which he wears a leg brace, both of which make him physically unstable. To "eliminat[e] the risk from a fall from an upper bunk" due to his vertigo, ADCRR has assigned Plaintiff to a lower bunk. Plaintiff's vertigo puts him at high risk for falls in the showers at Cook Unit, most of which are not equipped with support bars "for ADA use." Plaintiff depends on a medical safety device, such as a shower chair, to shower safely.

On January 5, 2024, Plaintiff was sent to the emergency room because his vertigo "rose to the extreme," and "[n]ot knowing what caused his disorder put him in fear for his life." After he was released from the emergency room, Plaintiff saw Defendant Thomas. Thomas issued a special needs order (SNO) for a shower chair and "avowed to submitting an order" for the shower chair. Thomas told Plaintiff that he would receive the chair "in a matter of days to a week." Thomas did not order a CT scan or blood tests or refer Plaintiff for follow-up with a specialist, "as would be common practice after becoming privy to an ailment such as [Plaintiff's vertigo]."

Plaintiff did not receive the shower chair, and he "made further inquiry on it[s] status." Plaintiff also "resubmitted his request via in person pop-in at the medical unit." "With each request," Defendant Thomas told Plaintiff that she had ordered the shower chair on January 5, 2024. According to Plaintiff, on one occasion, Defendant Thomas "carried this deceptive maneuver, at one of his inquiries, to the extent of acting as though she looked up the order on her computer," although Plaintiff "was not permitted to view her screen."

On January 26, 2024, Plaintiff's vertigo caused him to fall while he attempted to shower. Five days after the fall, Plaintiff was called to the medical unit to see CNA Hoover. During the visit, Hoover told Plaintiff that Defendant Thomas had not ordered the shower chair for Plaintiff. According to Plaintiff, it was Hoover's "position" that it was "wrong of [Defendant] Thomas to be holding out on ordering this needed medical safety device," and

1  Hoover was "working on going over Thomas[']s head to get the medical chair."  At some
2  point, Plaintiff received a shower chair.

3        On July 1, 2024, Plaintiff was told to pack because he was moving to Buckeye.
4  Plaintiff's belongings were shipped to his new unit, including the shower chair, but
5  subsequently, the move order was cancelled.  As a result, Plaintiff was left on the unit
6  without his shower chair.  On July 3, 2024, Defendant Thomas issued a second SNO for a
7  replacement shower chair but claimed she had no chairs in storage.  On July 6, 2024,
8  Plaintiff submitted a health needs request (HNR) "explaining the loss of his chair" and
9  stating that his vertigo was "pretty intense" and that he could not shower without the chair.
10  Plaintiff requested a new shower chair.  When Plaintiff received his property, a corporal
11  told him that his shower chair had been lost at the other prison.

12        On July 7, 2024, Plaintiff saw a nurse regarding the HNR, showed her the SNO for
13  the shower chair, and asked her for a chair.  The nurse told Plaintiff, "We do not have any
14  shower chairs."  Plaintiff told the nurse that he needed the chair because he had fallen once
15  before, and if he fell again, "it will be added to the lawsuit [he was] bringing."  A security
16  officer in the medical unit "interjected" and told Plaintiff, "Cool your jets, I'm going to
17  check for myself."  Five minutes later, the officer returned with a chair and said there were
18  more than 10 chairs "back there."

19        Plaintiff alleges that Defendant Thomas "intentionally and purposefully did not
20  submit" the order for the shower chair on January 5, 2024, as Thomas claimed.  Plaintiff
21  asserts that Thomas also failed to "begin the process of elimination to try and cure Plaintiff
22  [through] tests and the like."  He claims Thomas "keeps the custom and practice of being
23  led by her personal beliefs for the purpose scaling back individual medical care" and
24  "[s]howing by her actions" that prisoners "may only have medical needs met if [she]
25  believe[s] they deserve treatment."  Plaintiff contends Thomas "holds no fiduciary
26  obligation to save the company [that] employ[s] her money by being conservative with
27  medical care, therefore, no reasoning exists . . . for not producing and maintaining the
28  lowest constitutional standard of medical care."

Plaintiff asserts that as Medical Grievance Coordinator, Defendant Shipley is responsible for "finding reasonable resolution to medical grievances, at the earliest stage of the process." Plaintiff claims Defendant Shipley "did not fulfill the scope of his office when his resolve was to shift blame onto ADCRR, not to find a fix to this issue," and shifting blame "with witless predilection is no resolution" but is "merely a tactic of deflecting responsibility in order that the matter may be closed with little to no cost." Plaintiff contends ADCRR is responsible for ensuring medical care is available and provided to prisoners, but NaphCare is "the responsible party for actual medical care," and ADCRR employees "are not directly concerned with individual healthcare needs." Plaintiff alleges that Defendant Shipley "has knowledge" that ADCRR is not a licensed medical practitioner, does not issue medical SNOs or medications, and does not have "any physical dealings with f[i]lling the role of a doctor," in his response, Shipley named ADCRR "as the culprit for why Plaintiff's medical need was not being met." Plaintiff asserts that with "all the facts and evidence star[]ing Shipley in the face," Shipley's failure to take action makes him "just as culpable of indifference."

Plaintiff alleges that on January 24, 2024, Defendant Alvarez visited prisoners who "experienced issues with receiving medical care." Plaintiff asserts that during these meetings, Alvarez "was presented with documents from a lawsuit and multiple grievances" written by two prisoners (not Plaintiff), which "pointed out" Defendant Thomas's "performance of deliberate indifference toward these and other inmates." Plaintiff contends "[t]his knowledge set a foundation to help determine" that Defendant Thomas was "acting deliberate[ly] in denying care to inmates who clearly needed to be attended to." Plaintiff claims that allowing Defendant Thomas to remain employed after NaphCare took over medical care "allowed the subjugation of all inmates on her case load to suffer deliberate indifference by Thomas[']s hand." Plaintiff alleges that by not "abdicating" Defendant Thomas's employment, Defendant Alvarez "approved of her tyrannical method of healthcare," and thereby "in bad faith acted in deliberate indifference."

Plaintiff alleges that Defendant Thornell's "actions/inactions" amounted to

deliberate indifference because Thornell failed to maintain oversight of medical professionals and the medical grievance coordinator, who "actively violate incarcerated persons['] constitutional rights" by denying medical care, and Thornell failed to maintain oversight of prison officials who "cover[]up one another's wrongdoing in their attempt to thwart justice."

## III.    Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A.    Individual versus Official Capacity

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff has named all Defendants in their individual and official capacities. Accordingly, the Court will evaluate whether Plaintiff has stated a claim against any

1    Defendant in his or her individual or official capacity.

2    **B.    Defendant Thornell**

3    **1.    Individual Capacity**

4    There is no respondeat superior liability under § 1983, and therefore, a defendant's

5    position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights

6    does not impose liability. *Monell*, 436 U.S. 658; *Hamilton v. Endell*, 981 F.2d 1062, 1067

7    (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Because vicarious

8    liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each

9    Government-official defendant, through the official's own individual actions, has violated

10    the Constitution." *Iqbal*, 556 U.S. at 676.

11    Plaintiff has not alleged that Defendant Thornell personally participated in a

12    deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act,

13    or formed policies that resulted in Plaintiff's injuries.  Rather, Plaintiff names Thornell

14    based solely on his role as ADCRR Director.  Plaintiff fails to state a claim against

15    Defendant Thornell in his individual capacity.

16    **2.    Official Capacity**

17    "[A] suit against a state official in his or her official capacity is not a suit against the

18    official but rather is a suit against the official's office.  As such, it is no different from a

19    suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

20    (internal citation omitted).

21    Plaintiff cannot maintain a lawsuit for damages against Defendant Thornell in his

22    official capacity. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for

23    damages in their official capacity are not 'persons' for purposes of the suit because they

24    assume the identity of the government that employs them."); *see also Gilbreath v. Cutter*

25    *Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for

26    purposes of section 1983.  Likewise[,] 'arms of the State' such as the Arizona Department

27    of Corrections are not 'persons' under section 1983.") (citation omitted).

28    Plaintiff may maintain a lawsuit against Defendant Thornell in his official capacity

**TERMPSREF**

for *prospective* declaratory and injunctive relief because under the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment "does not . . . bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). But not all declaratory and injunctive relief is prospective. The exception is intended to prevent continuing violations of federal law and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Hindes v. FDIC*, 137 F.3d 148, 166 (3d Cir. 1998) ("The type of prospective relief permitted under *Young* is relief intended to prevent a continuing violation of federal law.").

Plaintiff is seeking retrospective, rather than prospective, declaratory relief. And although Plaintiff is seeking prospective injunctive relief, he has failed to state an official capacity claim. "[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. at 166; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 39 (2010) (the "'policy or custom' requirement [in *Monell*] applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."). A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006). Plaintiff does not allege that any of his injuries were the result of a specific ADCRR policy, procedure, or custom. Thus, the Court will dismiss without prejudice Defendant Thornell.

### C.    Defendant Alvarez

#### 1.    Individual Capacity

Plaintiff has not alleged that Defendant Alvarez personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. Rather, Plaintiff names Alvarez based solely on his role as NaphCare's Medical Director. Alvarez's awareness of other

prisoners' issues with *their* medical care does not support a conclusion that *Plaintiff* suffered any injury due to any conduct by Alvarez.  Plaintiff fails to state an individual-capacity claim against Defendant Alvarez.

### 2.    Official Capacity

The real party in interest for Plaintiff's official-capacity claim against Defendant Alvarez is the entity that employs Alvarez, that is, NaphCare.  As noted, to state an official-capacity claim, Plaintiff must identify a NaphCare policy or custom that caused him to suffer a constitutional injury.  *Id.* at 1080.  Plaintiff has not identified any such NaphCare policy or custom and therefore fails to state an official-capacity claim against Defendant Alvarez.  The Court will therefore dismiss Defendant Alvarez.

### D.    Defendant Shipley

Although not entirely clear, Plaintiff's claim against Defendant Shipley appears to be based on Shipley's response to Plaintiff's grievance concerning Defendant Thomas's failure to order the shower chair, which Shipley presumably denied.  Plaintiff alleges that Defendant Shipley failed to act on Plaintiff's grievance and shifted blame for Plaintiff's medical care to ADCRR.  Under Ninth Circuit law, a defendant can be liable for failure to act to prevent a constitutional violation.  *Taylor*, 880 F.2d at 1045.

Plaintiff's allegations against Defendant Shipley are too vague to state a claim. Plaintiff provides virtually no factual detail regarding any grievance he submitted regarding Defendant Thomas's failure to order the shower chair, such as when he submitted the grievance or the information he included in the grievance.  Plaintiff also fails to provide any factual detail concerning Defendant Shipley's response, including when Shipley responded, or the reasons given for denying the grievance.  Plaintiff fails to allege facts from which the Court could determine that Defendant Shipley was aware of an *ongoing* constitutional and failed to act.  The Court will therefore dismiss Defendant Shipley.

### IV.    Claim for Which an Answer Will be Required

Liberally construed, Plaintiff has stated an Eighth Amendment medical care claim against Defendant Thomas based on the allegation that Thomas failed to order the shower

chair on January 5, 2024, and as a result, Plaintiff fell in the shower on January 26, 2024. The Court will require Defendant Thomas to answer this portion of the First Amended Complaint.

## V.    Warnings

### A.    Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.    Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendant with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by

the Court.  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Defendants Thornell, Alvarez, and Shipley are **dismissed** without prejudice.

(2)    If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety on the court-approved form for filing a civil rights complaint by a prisoner (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(3)    Defendant Thomas must answer the First Amended Complaint.

(4)    The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Thomas.

(5)    Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)    If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

(7)    The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8)    The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendant must include a copy of this Order.

(9)    If Defendant agrees to waive service of the Summons and First Amended Complaint, Defendant must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)    personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally

served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)   Defendant Thomas must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)   This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 20th day of December, 2024.

James A. Teilborg
Senior United States District Judge